**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY KYLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 8895 |
| v. ) | |
| ) | Judge Amy St. Eve |
| FRED BEAUGARD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 30, 2016, Plaintiff Timothy Kyles filed a nine-count Fifth Amended Complaint against individuals employed by the Illinois Department of Corrections ("IDOC") alleging violations of his constitutional rights and state law claims that occurred while he was incarcerated at Stateville Correctional Center ("Stateville").[1] *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion. The Court grants Plaintiff leave to file a Sixth Amended Complaint in accordance with this ruling by no later than July 7, 2017.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also*

---

[1] Plaintiff was pro se when he filed his first three Complaints. On August 31, 2016, the Court enlisted counsel to represent Plaintiff. [R. 57].

*Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

In his Fifth Amended Complaint, Plaintiff brings claims against the following IDOC employees: Fred Beaugard (a Stateville Correctional Officer); Karen Rabideau (Stateville's Placement Officer); Tarry Williams (Stateville's Warden); Tralon Durrett (a Stateville Correctional Officer); William Brown (a Stateville Correctional Officer); Salvador Godinez (IDOC's Director until December 31, 2014); John Baldwin (IDOC's Acting Director and Director after December 31, 2014); Maurice Lake (a Stateville Shift Supervisor); Kevin Laskey (a Stateville Shift Supervisor); Joshua Clements (an Internal Affairs Division employee); Leslie Turner (lead investigator with the Internal Affairs Division); and Nicholas Lamb (Stateville's

Assistant Warden).² (R. 86, Fifth Am. Compl. ¶¶ 5-21, 23-30.)

Plaintiff was incarcerated at Menard Correctional Center ("Menard") from approximately 2011 until January 2012. (*Id.* ¶¶ 1-2.) In 2011, while at Menard, a group of inmates who were members of the Gangster Disciples approached Plaintiff and gave him approximately 20 contraband knives and shivs and directed him to hide this contraband in his cell. (*Id.* ¶ 36.) At that time, Plaintiff was affiliated with the Gangster Disciples. (*Id.*) Thereafter, Plaintiff voluntarily turned in the contraband to prison officials and renounced his gang affiliation. (*Id.* ¶ 37.) IDOC officials then transferred Plaintiff to the Segregation Unit at Menard to protect him from members of the Gangster Disciples. (*Id.* ¶ 38.) In January 2012, IDOC transferred Plaintiff to Stateville and he applied for protective custody status due to his fears that inmates affiliated with the Gangster Disciples would find out what he had done at Menard. (*Id.* ¶¶ 39-41.) Stateville's Internal Affairs Division granted Plaintiff's application for Protective Custody ("PC"), after which he was housed in the PC Unit. (*Id.* ¶¶ 42-43.)

Plaintiff alleges that while incarcerated at Stateville, IDOC physicians and psychologists diagnosed him with bipolar mania (with psychotic features) and that these professionals told him that he should notify Stateville staff when he was having mental health episodes. (*Id.* ¶¶ 44-51.) Meanwhile, on October 24, 2014, a Stateville Correctional Officer, Officer Juborek, who is not a named Defendant to this lawsuit, threatened to put contraband in Plaintiff's cell thereby jeopardizing Plaintiff's "good time" credits. (*Id.* ¶¶ 55-56.) Immediately after Plaintiff lodged a complaint about Officer Juborek in a statement to Internal Affairs and via a verbal complaint to

---

² On June 9, 2017, the Court granted Plaintiff's agreed motion to dismiss with prejudice Defendants Kathy Boggess and Cynthia Harris from this lawsuit. [R. 159].

Defendant Beugard, Plaintiff maintains that certain Defendants, including Shift Supervisor Defendants Lake and Laskey, were involved in issuing him a false disciplinary ticket – stating that Plaintiff had threatened a correctional officer – in retaliation for his complaints against Officer Juborek. (*Id*. ¶¶ 27-30, 60-63, 65-66.) On November 5, 2014, the Administrative Review Board ("ARB") expunged the disciplinary ticket as unsubstantiated. (*Id*. ¶¶ 129-32.)

In the interim, Plaintiff alleges that certain Defendants, including Defendants Williams and Rabideau, retaliated against him by placing him in a double-cell in segregation with Jorge Pena, a general population inmate affiliated with the Gangster Disciples – despite knowing of Plaintiff's mental illness and PC status – while Plaintiff awaited the hearing on his disciplinary ticket. (*Id*. ¶¶ 63, 67, 81-90.) Also, Plaintiff asserts that he informed certain staff members that he was wrongfully double-celled, who then notified Defendant Williams. (*Id*. ¶¶ 92-94.) Shortly thereafter, Pena physically assaulted and raped Plaintiff. (*Id*. ¶¶ 100-05, 109-11.) Plaintiff then told Defendants Brown and Durrett about Pena physically abusing and raping him, but they refused to help him. (*Id*. ¶¶ 103-04, 113-23.) In particular, Plaintiff alleges Defendant Durrett responded that this is "what happens to P.C. motherfuckers who try to have my officers investigated by Internal Affairs." (*Id*. ¶ 115.) Moreover, according to Plaintiff, neither Defendant Brown nor Defendant Durrett reported Plaintiff's physical abuse to medical officials at Stateville. (*Id*. ¶ 117.) Plaintiff also alleges that he told Defendants Rabideau and Williams about his improper assignment, namely, being double-celled with Pena, through letters, an emergency grievance, and verbal communications. (*Id*. ¶¶ 96-97, 120-26.) Nevertheless, Defendants Rabideau and Williams did not respond. (*Id*. ¶¶ 121, 123-26.) After the ARB hearing on November 4, 2014, Defendants did not move Plaintiff from his double-cell for five

4

days. (*Id*. ¶¶ 129-42.)

Based on these allegations, Plaintiff brings the following claims: (1) a First Amendment Retaliation Claim (Count I); (2) Eighth Amendment Failure to Protect Claims (Counts II and III); (3) an Eighth Amendment Medical Care Claim (Count IV); (4) an Eighth Amendment Failure to Intervene Claim (Count V); (5) a Civil Conspiracy Claim under 42 U.S.C. § 1983 (Count VI); (6) an Intentional Infliction of Emotional Distress ("IIED") Claim (Count VII); (7) a State Law Conspiracy Claim (Count VIII); and (7) a claim based on *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Count IX). In the present motion to dismiss, Defendants challenge all of Plaintiff's claims except his Eighth Amendment Medical Care Claim alleged in Count IV.

## ANALYSIS

### I. First Amendment Retaliation Claim – Count I

In Count I, Plaintiff brings a First Amendment retaliation claim against Defendants Williams, Rabideau, Beugard, Brown, Durrett, Lake, Laskey, Clements, and Turner. In their motion, Defendants argue that Plaintiff has failed to sufficiently allege the third element of his First Amendment retaliation claim under the federal pleading standards. "To state a First Amendment claim for retaliation, a plaintiff must allege that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action.'" *Perez v. Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015) (citation omitted). Defendants argue that Plaintiff's allegations concerning their motivation are implausible.

5

Accepting Plaintiff's allegations as true and all reasonable inferences in his favor, Plaintiff has set forth sufficient allegations that Defendants were motivated by Plaintiff's complaints concerning Officer Juborek when they retaliated against him by issuing a false, unsubstantiated disciplinary ticket and placing him in double-cell segregation with Pena. *See Iqbal*, 556 U.S. at 678 (complaint is plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Specifically, Plaintiff alleges that Defendant Beaugard knowingly wrote the false ticket at the direction of one or more of Defendant Beugard's supervisors, including Defendants Lake and Laskey. (Fifth Am. Compl. ¶¶ 27-30, 60, 63, 65, 128.) Plaintiff also states that Internal Affairs Defendants Clements and Turner knew that Plaintiff had lodged a complaint against Officer Juborek, took a statement from Plaintiff about his complaint, and then were involved in Plaintiff being sent to double-cell segregation based on the false disciplinary ticket. (*Id.* ¶¶ 62-63.) Furthermore, Plaintiff alleges that Defendant Rabideau and/or Defendant Williams, who knew his PC status, nonetheless assigned Plaintiff to double-cell segregation knowing that his cellmate, Jorge Pena, had a history of violence and was affiliated with the Gangster Disciples. (*Id.* ¶¶ 81-83, 86-90.) After his cellmate raped him, Plaintiff complained about the physical abuse to Defendants Brown and Durrett, but neither Brown nor Durrett referred him for medical care or took action to remove Plaintiff from the double-cell. (*Id.* ¶¶ 100-05, 109-10, 113-19.) According to Plaintiff, Defendant Durrett told him that Pena's assaults were justified because that is "what happens to P.C. motherfuckers who try to have my officers investigated by Internal Affairs." (*Id.* ¶ 115.) Plaintiff remained in the double-cell with Pena until November 10, 2014, which was five days after the ARB expunged the disciplinary ticket.

6

(*Id.* ¶¶ 129-32, 140-42.)

Despite these detailed allegations, Defendants take issue with Plaintiff's use of the phrase "upon information and belief" arguing that Plaintiff has failed to sufficiently allege his First Amendment claim. Although a plaintiff's ability to state allegations based on "information and belief" is restricted in the context of fraud allegations pursuant to Rule 9(b), under Rule 8(a), "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (citation omitted); *see, e.g., Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). Defendants' attempt to factually challenge these allegations fares no better because it is well-settled – even after *Iqbal* and *Twombly* – that courts must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Heng v. Heavner, Beyers & Mihlar,* LLC, 849 F.3d 348, 351 (7th Cir. 2017). The Court denies Defendants' motion to dismiss Count I of the Fifth Amended Complaint.

**II.     Eighth Amendment Failure to Protect Claims – Counts II & III**

In Count II, Plaintiff brings an Eighth Amendment failure to protect claim against Defendants Williams and Rabideau, and, in Count III, Plaintiff brings a failure to protect claim against Defendants Williams, Rabideau, Beaugard, Brown, Durrett, Clements, Turner, and Lamb. Correctional officials have a duty to protect inmates from violent assaults by other inmates. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). More specifically, a "prison has a duty to its inmates to protect them against violence by other inmates because imprisoning a person blocks his access to forms of self-protection and police protection that he would have on the outside."

7

*Glade ex rel. Lundskow v. United States,* 692 F.3d 718, 722 (7th Cir. 2012). This "duty is violated only by deliberate indifference to a known substantial risk." *Smith v. Sangamon County Sheriff's Dep't,* 715 F.3d 188, 191 (7th Cir. 2013); *see also Farmer,* 511 U.S. at 835 ("deliberate indifference describes a state of mind more blameworthy than negligence"). In order to state a deliberate indifference/failure to protect claim, Plaintiff must allege that Defendants were actually aware of a substantial risk of harm to his safety, and yet, failed to take the appropriate steps to protect him from that harm. *See Tidwell v. Hicks,* 791 F.3d 704, 708 (7th Cir. 2015); *Smith,* 715 F.3d at 191.

Again, Defendants challenge Plaintiff's allegations based upon "information and belief" arguing that Defendants Williams and Rabideau "could not possess the knowledge necessary to have a culpable state of mind to act with deliberate indifference to the specific threat." (R. 137, Motion, at 6.) In the context of a failure to protect claim, the Seventh Circuit has rejected the "suggestion[] that deliberate indifference requires either the threatened detainee to advise his custodians of a pending threat, or a custodial officer to know in advance the identity of the particular plaintiff at risk." *Brown,* 398 F.3d at 915. Rather, the Seventh Circuit has held that "deliberate indifference may also be predicated on the custodians' knowledge of an assailant's predatory nature." *Id.*

Plaintiff has plausibly alleged that both Defendants Williams and Rabideau knew of Pena's affiliation with the Gangster Disciples, as well as Pena's history of violence, and that the Gangster Disciples "were out to injure or kill" Plaintiff. (Fifth Am. Compl. ¶¶ 160, 165.) Also, Plaintiff asserts that he informed Defendants Williams and Rabideau that he was a PC inmate and that it was improper for him to be housed with Pena – via verbal communications, letters,

8

and an emergency grievance that Plaintiff filed directly to Defendant Williams. (*Id.* ¶¶ 64, 83, 96-97, 120-26.) Plaintiff further states that Defendants Williams and Rabideau were involved and responsible for his placement in the double-cell with Pena. (*Id.* ¶¶ 86-88.)

As to Defendants Beugard, Clements, Turner, Brown, and Lamb, Plaintiff asserts that these Defendants knew of the serious harm he faced in being housed with Pena, including when he explained to Defendants Beugard and Brown that "the mob is gonna have me killed if you put me in segregation, you can't put me in the cell with anybody." (*Id.* ¶¶ 12, 69, 96-98, 165.) He also alleges that these Defendants had knowledge of Pena's predatory nature and history of violence. (*Id.* ¶¶ 26, 42, 63-64, 96-98.) Plaintiff further states that these Defendants were aware of his severe mental health issues. (*Id.* ¶¶ 58-59, 66, 84-85, 106, 160, 165-66.)

Viewing these allegations and all reasonable inferences in Plaintiff's favor, he has plausibly stated a Eighth Amendment failure to protect claim against the Defendants named in Counts II and III. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore denies Defendants' motion to dismiss Counts II and III of the Fifth Amended Complaint.

## III.     Eighth Amendment Failure to Intervene Claim – Count V

Plaintiff brings a failure to intervene claim against Defendants Beaugard, Rabideau, Williams, Durrett, Brown, Lake, Laskey, Clements, Turner, and Lamb in Count V of his Fifth Amended Complaint. To succeed on a failure to intervene claim, Plaintiff must show that Defendants: "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent." *Gill v. City of Milwaukee,* 850 F.3d 335, 342 (7th Cir. 2017). In their

9

motion, Defendants argue that Plaintiff has failed to adequately alleged his failure to intervene claim as to Defendants Clements, Rabideau, Beugard, Lake, Lamb Laskey, Turner, and Williams because these Defendants did not have a realistic opportunity to intervene and stop the alleged constitutional violations. *See Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008) (officer must be "informed of the facts that establish a constitutional violation and ha[ve] the ability to prevent it.") (citation omitted).

In his response, Plaintiff addresses the failure to intervene allegations in the context of his Eighth Amendment duty to protect claim. In doing so, Plaintiff alleges that Defendants Beaugard, Turner, Clements, Williams, Lake, and Laskey had the opportunity to object to the false disciplinary ticket and placement of Plaintiff in segregation with Pena. (Fifth Am. Compl. ¶¶ 63, 64.) He further asserts that Defendants Williams and Rabideau had the opportunity to place Plaintiff in a different cell or move him per his direct requests of which they were aware. (*Id.* ¶¶ 80-90, 120-23.) In addition, Plaintiff alleges that Defendants Brown and Durrett had several opportunities to intervene to protect Plaintiff from Pena, including after Pena had raped him. (*Id.* ¶¶ 91, 103-04, 113-19.) Plaintiff also contends that Defendants Williams and Lamb had the opportunity to move Plaintiff from his cell. (*Id.* ¶¶ 96-98.) Based on Plaintiff's factual allegations, he has provided "enough details about the subject-matter of the case to present a story that holds together.'" *Presser v. Acacia Mental Health Clinic,* LLC, 836 F.3d 770, 776 (7th Cir. 2016) (citation omitted). The Court denies Defendants' motion to dismiss in this respect.

## IV.	Civil Conspiracy Claim under 42 U.S.C. § 1983 – Count VI

In Count VI of his Fifth Amendment Complaint, Plaintiff brings a § 1983 conspiracy claim against Defendants Beaugard, Rabideau, Williams, Durrett, Brown, Lake, Laskey, Clements, Turner, and Lamb.  The elements of a § 1983 conspiracy claim include that (1) the defendants reached an agreement to deprive the plaintiff of his constitutional rights; and (2) overt acts in furtherance of the agreement actually deprived the plaintiff of those constitutional rights. *See Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015); *see also Cooney v. Casady,* 735 F.3d 514, 518 (7th Cir. 2013) ("The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.") (citation omitted).

In their motion, Defendants specifically argue that Plaintiff alleges a "mere suspicion" that Defendants reached an agreement to deprive him of his constitutional rights. *See Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009) ("mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough.").  The Court agrees.  Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, although Plaintiff alleges that the Defendants "acted in concert with one another to accomplish one or more unlawful purposes by unlawful means" and that each Defendant "committed overt acts" or otherwise willfully participated in "unlawful joint activity," Plaintiff's allegations do not raise his right to relief above the speculative level. *See Twombly*, 550 U.S. at 555.  In particular, Plaintiff does not supply enough factual details about the participants' agreement or general objective except that the "larger scheme" was to punish Plaintiff for complaining about Officer

11

Juborek. Also, Plaintiff's bare-boned allegation that Defendants conferred and then agreed to issue the false disciplinary ticket does not supply enough factual details for the Court to draw the reasonable inference that Defendants are liable for the alleged misconduct. *See Iqbal,* 556 U.S. at 678; *see also Cooney,* 583 F.3d at 970 ("bare allegation of conspiracy [] not enough to survive a motion to dismiss for failure to state a claim"). As such, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 conspiracy claim without prejudice. The Court grants Plaintiff leave to re-allege his § 1983 conspiracy claim keeping in mind counsel's Rule 11 obligations.

## V.     IIED Claim – Count VII

Plaintiff brings his common law IIED claim against Defendants Beaugard, Rabideau, Williams, Durrett, Brown, Lake, Laskey, Clements, Turner, Lamb, and Godinez. In their motion, Defendants contend that Plaintiff has failed to allege that their conduct was "extreme and outrageous" to support his IIED claim. "To recover on a claim for IIED, Illinois law requires a plaintiff to prove: (1) that the conduct was extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and, (3) that the conduct in fact caused severe emotional distress." *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir. 2015). The tort of IIED does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Boston v. U.S. Steel Corp.,* 816 F.3d 455, 467 (7th Cir. 2016) (citation omitted). Illinois courts consider three factors when deciding whether a defendant's conduct is objectively extreme and outrageous, including: (1) whether the defendant had a position of power over the plaintiff; (2) whether the defendant knew of plaintiff's susceptibly to emotional distress; and (3) whether defendant reasonably believed his objective was legitimate. *See Cairel*

*v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016); *Fox v. Hayes,* 600 F.3d 819, 842 (7th Cir. 2010).

As discussed above, although Plaintiff has sufficiently alleged that Defendants Beaugard, Rabideau, Williams, Durrett, Brown, Lake, Laskey, Clements, Turner, and Lamb were aware of his PC status, the harm he faced in being housed with Pena, and Plaintiff's mental health issues, Plaintiff has failed to allege that Defendant Godinez, the Director of IDOC during the relevant time period, was aware of Plaintiff's situation. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's IIED claim against Defendant Godinez.

Turning to Defendants' argument that Plaintiff has failed to adequately allege extreme and outrageous conduct, viewing Plaintiff's allegations in his favor, Plaintiff has alleged that Defendants, who are in a position of power over him, knew that he had mental health issues, and thus was susceptible to emotional distress. Plaintiff's allegations also reveal that Defendants knew of Pena's dangerous propensities and of Plaintiff's PC status. Despite this knowledge, Plaintiff alleges that Defendants housed him with Pena without a legitimate reason for doing so, namely, in retaliation for his complaint against Officer Juborek. Under these allegations, Plaintiff has sufficiently alleged that Defendants' conduct was "extreme and outrageous" under Illinois law. *See Cairel*, 821 F.3d at 836. The Court denies Defendants' motion to dismiss in this respect.

## VI. State Law Conspiracy Claim – Count VIII

Plaintiff brings a state law conspiracy claim against Defendants Beaugard, Rabideau, Williams, Durrett, Brown, Lake, Laskey, Clements, Turner, and Lamb in Count VIII of his Fifth Amended Complaint. "In Illinois, civil conspiracy is defined as 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a

13

lawful purpose by unlawful means.'" *Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 938 (7th Cir. 2012) (citation omitted). "[T]o state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 133, 720 N.E.2d 242, 241 Ill.Dec. 787 (Ill. 1999); *see also Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 206 Ill.Dec. 636, 645 N.E.2d 888 (Ill. 1994) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.").

Both parties adopt their arguments regarding Plaintiff's § 1983 conspiracy claim alleged in Count VI without recognizing the differences between these theories of liability. In any event, in Illinois, civil conspiracy is an intentional tort requiring that a defendant "knowingly and voluntarily participate[] in a common scheme to commit an unlawful act." *McClure,* 188 Ill. 2d at 133. Under this guidance, Plaintiff's state law conspiracy claim fails because he must allege more than that "Defendants reached agreements among themselves" or that certain Defendants "conferred and agreed" to issue him a false disciplinary ticket. (Fifth Am. Compl. ¶¶ 63, 184.) As such, the Court grants Defendants' motion to dismiss Plaintiff's common law conspiracy claim without prejudice and also grants Plaintiff leave to re-allege this conspiracy claim keeping in mind counsel's Rule 11 obligations.

## VII. Monell Claim – Count IX

Last, in Count IX, Plaintiff alleges a *Monell* claim against IDOC via Defendants Baldwin and Godinez, who were IDOC's directors during the relevant time period. To recover under *Monell*, Plaintiff must show that (1) he suffered a deprivation of a constitutional right; (2) as a

14

result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017); *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Viewing his allegations and all reasonable inferences in his favor, Plaintiff has sufficiently stated his *Monell* claim under the federal pleading standards. More specifically, Plaintiff alleges that there is a widespread custom at Stateville to double-cell PC inmates with general population inmates when they are detained for investigations or temporary confinement purposes and that this policy contravenes Defendants' Eighth Amendment duty to protect. Furthermore, Plaintiff asserts that Defendants Godinez and Baldwin, through their final policy-making authority, have ratified this unconstitutional treatment of PC inmates. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiff contends that this policy led to his assignment with Pena, who raped and abused him. Also, he asserts that IDOC fails to terminate or discipline its employees who fail to comport with constitutional standards by assigning PC inmates as such. *See Connick v. Thompson,* 563 U.S. 51, 62 (2011).

Meanwhile, Defendants' argument that "IDOC is afforded a great deal of discretion on how to assign its inmates" is an improper attempt to rebut Plaintiff's allegations with Defendants' own allegations. *See Smith v. Burge,* 222 F. Supp. 3d 669 (N.D. Ill. 2016) ("defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations" because "[t]he attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the

15

plaintiff's claim, as set forth by the complaint, is without legal consequence.") (quoting *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987)).  Accordingly, the Court denies Defendants' motion to dismiss Count IX of the Fifth Amended Complaint.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Rule 12(b)(6) motion to dismiss.  The Court grants Plaintiff leave to file a Sixth Amended Complaint in accordance with this ruling by no later than July 7, 2017.

**Dated**:  June 13, 2017

**ENTERED:**

*/s/ Amy J. St. Eve*

**AMY J. ST. EVE**
**United States District Court Judge**