**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Timothy Kyles, | Civil Action No. 15 C 8895 |
| Plaintiff, | Judge Amy J. St. Eve |
| v. | |
| Fred Beaugard, et al., | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 56 PARTIAL MOTION FOR SUMMARY JUDGMENT

From October 2014 to April 2016, Plaintiff Timothy Kyles submitted and resubmitted a multitude of grievances complaining of the allegations raised in the Fifth Amended Complaint ("Complaint"). Kyles initially submitted a timely emergency grievance while being improperly held in segregation between October 24, 2014 and November 10, 2014. He then submitted at least two timely grievances on December 22, 2014, which he resubmitted in January, February, and June 2015 when he did not receive a response from the grievance counselor at Stateville Correctional Center ("Stateville"). Where the counselor eventually did respond, the grievances were denied on the merits and Kyles appealed those decisions up to the Administrative Review Board ("ARB") in Springfield, Illinois. Kyles filed additional grievances related to the same events after being transferred to Hill Correctional Center ("Hill"), which had implemented a rule eliminating time limits for submitting grievances related to allegations of sexual abuse. Defendants now move for summary judgment on Counts I, VII, and IX of the Complaint, asking this Court to find that despite the myriad of grievances filed and appealed by Kyles, he somehow failed to exhaust his administrative remedies under the Illinois Administrative Code. The Court should deny Defendants' motion because Kyles exhausted his administrative remedies as a

Case: 1:15-cv-08895 Document #: 192 Filed: 07/21/17 Page 2 of 17 PageID #:845

matter of law by: (1) submitting multiple timely grievances to which Stateville failed to respond; (2) resubmitting grievances that Stateville denied on the merits; and (3) submitting additional grievances at Hill after it had eliminated time limits for grievances related to allegations of sexual abuse.

## I. FACTUAL BACKGROUND

### A. PRISON RESPONSE REQUIRED TO CONTINUE GRIEVANCE PROCESS.

As Defendants explain, an inmate must deposit a written grievance in the bars of his cell for a prison official to pick up with the institutional mail and deliver to a counselor. (Def. SOF Nos. 8-9; Pl. SOF No. 1.)[1] But Defendants neglect to inform the Court that an inmate deposits his *only* copy of the grievance—the original grievance—for mail pick-up. (*See generally* Pl. SOF No. 13.) Inmates at Stateville are not permitted to make copies of grievances that do not contain a counselor's response. (Pl. SOF No. 2.) Instead, an inmate must wait for a response from a counselor in order to make a copy of the grievance. (*Id.*) If no response is received from a counselor, then the inmate does not have any documentation of filing the grievance, and, thus, has nothing to submit to the subsequent levels of the grievance process. (*Id.*) Where a counselor does respond to the grievance, then the inmate receives back his original grievance bearing a response, can then make a copy of the same, and can use the grievance form bearing the counselor's response to continue through the grievance process at the grievance officer, Chief Administrative Officer ("CAO"), and Administrative Review Board ("ARB") levels. (*See generally* Def. 56.1 Nos. 11, 18, 21-23; Pl. SOF No. 1.)

---

[1] Citations to facts set forth in Defendants' Local Rule 56.1 Filing are herein referred to as "Def. SOF Nos. X." Citations to facts set forth in Plaintiff's Local Rule 56.1 Statement of Additional Facts are herein referred to as "Pl. SOF Nos. X." Citations to exhibits to Plaintiff's Local Rule 56.1 Statement of Additional Facts are herein referred to as "Pl. Ex."

If an inmate believes he faces "a substantial risk of imminent personal injury or other serious or irreparable harm," he can file an emergency grievance. (20 Ill. Admin. Code 504.840(a).) Emergency grievances go directly to the CAO, who at Stateville during the relevant time period was Defendant Warden Tarry Williams. (Def. SOF Nos. 13; 20 Ill. Admin. Code 504.840.) The CAO is supposed to respond to the inmate's emergency grievance by either handling it on an emergency basis or instructing the inmate in writing to resubmit the emergency grievance through the standard grievance process. (20 Ill. Admin. Code 504.840(b-c).)

Notwithstanding the aforementioned rules, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. (20 Ill. Admin. Code 504.810(a).)

## B. KYLES SUBMITTED A MYRIAD OF GRIEVANCES.

### 1. October/November 2014 Emergency Grievance.

Between October 27 and November 3, 2014, shortly after Defendants placed Kyles in a segregation cell at Stateville on October 24, 2014, Kyles deposited an emergency grievance ("Emergency Grievance") in the bars of his cell to go directly to Defendant Williams as the CAO. (Pl. SOF Nos. 6, 8, 10, 11.) The Emergency Grievance generally alleged that Kyles, a protective custody ("PC") inmate, had been improperly placed in a segregation cell with Jorge Pena, a general population inmate and known gang affiliate, who was abusing him. (*Id.* at No. 9.) Kyles never received a response to the Emergency Grievance, nor was he able to make a copy of it without a response. (*Id.* at No. 12, 13.)

### 2. December 2014 Grievances.

On December 22, 2014, Kyles submitted multiple additional grievances concerning the events underlying the Complaint, again by depositing them in the bars of his cell for institutional mail pick-up. (*Id.* at 1, 14.) The scope of these December 2014 Grievances was broad and

covered factual details relating to Counts I, VII, and IX of the Complaint, including that
Defendant Beaugard knowingly wrote Kyles a false disciplinary ticket for reporting that Kyles
felt provoked by correctional officer Juborek, and that Kyles was then improperly placed in
segregation in a cell with Jorge Pena despite Kyles's PC status. (*Id.* at 14, 16-19, 21-22, 24, 28-
29; *see also* Pl. Ex. D, E, F, H, I, J & K.) In fact, the December 2014 Grievances alleged that
Stateville has a practice of housing PC inmates in segregation for investigative purposes with
general population inmates. (Pl. SOF Nos. 14, 16-19, 21-22, 24, 28-29; *see also* Pl. Ex. D, E, F,
H, I, J & K.) The December 2014 Grievances also included allegations that Pena physically
assaulted Kyles and that Defendants did nothing when Kyles told them of the abuse and
improper placement in a cell with Pena. (Pl. SOF Nos. 14, 16-19, 21-22, 24, 28-29; *see also* Pl.
Ex. D, E, F, H, I, J & K.) The December 2014 Grievances further grieved that Defendant
Rabideau held Kyles in segregation for five extra days after his disciplinary ticket had been
expunged as unsubstantiated. (Pl. SOF Nos. 14, 16-19, 21-22, 24, 28-29; *see also* Pl. Ex. D, E,
F, H, I, J & K.) Kyles received no counselor response to any of the December 2014 Grievances,
and, consequently, was not able to make photocopies of the same or elevate these grievances to
the other levels of the grievance process. (Pl. SOF No. 15; Pl. Ex. D.)

### 3.     January 2015 Grievances.

On January 19 and 20, 2015, Kyles continued to grieve the allegations from the
December 2014 Grievances by submitting two more grievances. (Pl. SOF Nos. 16, 18; Pl. Ex. E,
F, J & K.) Again, Kyles did not receive a counselor response to the initial submission of his
January 2015 Grievances. (Pl. SOF No. 20.)

### 4.     February 2015 Grievances.

On February 17, 2015, Kyles submitted another grievance (later assigned grievance
number 711 by Stateville) complaining that he had not received responses to his December 2014

Grievances.  (Pl. SOF No. 21; Pl. Ex. D.[2])  Kyles attached to the same rewritten versions of the grievances filed on December 22, 2014 (which Stateville later assigned grievance numbers 712 and 713).  (Pl. SOF No. 21; Pl. Ex. D; *see also* Pl. Ex. H & I.)  The content of Grievances 712 and 713 reflected subject matter covered by Kyles's December 2014 Grievances. (Pl. SOF Nos. 21-25; Pl. Ex. D, H & I.)  A Stateville counselor and grievance officer addressed the merits of these grievances without denying them as untimely.  (Pl. SOF No. 26; Pl. Ex. H & I.)[3]

### 5.    March & April 2016 Grievances.

On March 28, 2016, Kyles filed yet another grievance—this time at Hill—where he was incarcerated at the time.  The March 2016 Grievance alleges that while in PC status and "deemed mentally ill," Kyles was improperly and for retaliatory reasons placed by Defendants in a segregation cell with a general population inmate, who then physically and sexually abused Kyles.  (Pl. SOF No. 33; Pl. Ex. N.)  The March 2016 Grievance further explained that Kyles was placed in segregation after he made a report to Internal Affairs about improper conduct by correctional officer Juborek.  (Pl. SOF No. 33; Pl. Ex. N.)  It also described how Kyles tried "several times to report this issue."  (Pl. SOF No. 33; Pl. Ex. N.)  On appeal, the ARB ultimately reviewed the March 2016 grievance and found it to be untimely, despite Hill's rule at the time that there are no time limits for filing grievances related to sexual assault.  (Pl. SOF No. 34; Pl. Ex. N.)

---

[2] Kyles did not appeal the CAO's decision on Grievance 711, as he received the remedy that he sought by that grievance—that Stateville respond to Grievances 712 and 713.  (*See* Pl. Ex. D.)

[3] On June 24, 2015, Kyles re-filed the December 2014, January 2015, and February 2015 Grievances because he had not received responses to the full scope of these grievances.  (Pl. SOF Nos. 28-29; Pl. Ex. F, J & K.)  Kyles does not assert that these June 2015 grievances exhausted his administrative remedies because, as explained in this Response, he exhausted in three different ways. Nonetheless, the June 2015 Grievances represent Kyles's persistence in ensuring that he exhausted every possible administrative remedy and further evidence regarding the content of his timely grievances.  (Pl. SOF No. 29; Pl. Ex. F, J & K.)

Kyles filed another grievance from Hill on April 22, 2016, which again grieved that on October 24, 2014 he reported to Defendant Beaugard that Officer Juborek was harassing him and Defendant Beaugard wrote him a knowingly false disciplinary ticket in retaliation for that report. (Pl. SOF No. 35; Pl. Ex. O)  The April 2016 Grievance also alleged—again—that in further retaliation Kyles had been improperly placed in segregation with a general population inmate, despite his PC status, and that Kyles's cellmate in segregation (Jorge Pena) physically and sexually assaulted him.  (Pl. SOF No. 35; Pl. Ex. O.)  It stated that Kyles reported Pena's abuse to Defendants Durrett and Brown, who only laughed at him and confirmed it was retaliation for his reporting on Officer Juborek.  (Pl. SOF No. 35; Pl. Ex. O.)  The April 2016 Grievance also noted it was the eighth time that Kyles had grieved these issues.  (Pl. SOF No. 35; Pl. Ex. O.)

IDOC responded to the April 2016 Grievance by conducting an investigation into Kyles's allegations of sexual abuse and staff misconduct pursuant to the Prison Rape Elimination Act ("PREA"), and ultimately denied this grievance on the merits.  (Pl. SOF No. 38; Pl. Ex. O.)  The grievance denial was based on a PREA investigation at Stateville conducted by Defendant Laskey, who initially approved the October 24, 2014, false disciplinary ticket issued to Kyles and his immediate placement in segregation with Pena after complaining about Officer Juborek. (Pl. SOF No. 36; Pl. Ex. O.)

**6.    Other Efforts by Kyles to Notify Prison of His Allegations.**

While in segregation from October 24 to November 10, 2014, Kyles wrote Defendant Rabideau numerous letters regarding his PC status and the fact that he had been improperly placed in a segregation cell with a general population inmate (Jorge Pena), who was a known gang affiliate and was attacking him and taking his food.  (Pl. SOF Nos. 3-5; Pl. Ex. B & C.) Kyles placed these letters in the bars of his cell for pick up by the institutional mail.  (Pl. SOF Nos. 3-5.)  Rabideau never responded to Kyles's letters, only two of which Kyles was able to

have copies made by the Stateville law library clerk when making rounds in the segregation unit. (*Id.*)

## II.     LEGAL STANDARD

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Defendants bear the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court in ruling on Defendants' Motion must view the evidence in the light most favorable to Kyles and draw all reasonable inferences in Kyles's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment for the Defendants is warranted only if a reasonable jury could not return a verdict for Kyles. *Id.* at 248. "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal quotations omitted).

Here, Defendants bear the burden of proving non-exhaustion, meaning "they must do more than point to a lack of evidence in the record; rather, they must establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies." *Santiago v. Anderson*, 496 F.App'x 630, 636 (7th Cir. 2012).

## III.    ARGUMENT

### A.    KYLES EXHAUSTED HIS ADMINISTRATIVE REMEDIES BY SUBMITTING MULTIPLE TIMELY GRIEVANCES TO WHICH STATEVILLE FAILED TO RESPOND.

It is well-settled in the Seventh Circuit that a prison inmate exhausts his administrative remedies if he files a timely grievance and prison officials do not respond to that grievance. *See*

*Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir. 2006) (cited in Def. Motion[4] at 4) (denying summary judgment where plaintiff filed timely grievance that prison did not respond and observing that "[p]rison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (denying summary judgment because "prison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA so narrowly as to permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." (quotation omitted)); *Smith v. Hardy*, No. 10 C 6436, 2012 WL 2127488, at *4 (N.D. Ill. June 12, 2012) (denying summary judgment where plaintiff filed timely grievances and prison did not respond because "a detainee cannot be faulted when correctional officials failed to respond to his grievance."); *Cooper v. Rothstein*, No. 04 C 8164, 2007 WL 1452989, at *2 (N.D. Ill. May 17, 2007) (same).

Here, Kyles timely submitted his Emergency Grievance and December 2014 Grievances by depositing them in the bars of his cell for pick up by the institutional mail at Stateville within sixty (60) days of the events giving rise to the same, but neither Defendant Warden Tarry Williams nor the Stateville counselor responded to these grievances. (Pl. SOF Nos. 6, 9-15.) Kyles therefore exhausted his administrative remedies because he had no remaining administrative remedy available to him as a counselor's response is required to move a grievance to the next levels of the process. By timely submitting the Emergency Grievance and the December 2014 Grievances, Kyles "has [] given the prison administrative process an opportunity

---

[4] Defendants' Memorandum of Law in Support of Their Rule 56 Partial Motion for Summary Judgment is herein referred to as "Def. Motion."

to resolve his complaint[.]" *Dole*, 438 F.3d at 810. The "misstep" in the administrative process "was entirely that of the prison system," as Stateville did not respond to Kyles's timely grievances. *Id.*; *see also Smith*, 2012 WL 2127488, at *4 (denying summary judgment where plaintiff "submitted a grievance three separate times, but received no response").

Defendants' entire argument assumes that Kyles did not submit any timely grievances merely because Stateville did not create (or cannot find) a record of such grievances. (Def. Motion at 6.) This is inapposite. Defendants prohibited Kyles from making copies of his timely filed grievances and failed to respond to them. As such, Defendants cannot now claim that Kyles has not properly grieved any specific claims or notified Defendants. Kyles should "not [be] held accountable when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance" by failing to respond to them once submitted. *Smith*, 2012 WL 2127488, at *4.

Defendants' Motion relies on IDOC officials' statements that the Grievance Office did not receive any grievances from Mr. Kyles and the ARB did not receive any grievances or grievance related documents from Mr. Kyles. But Kyles does not claim that he submitted the Emergency Grievance and December 2014 Grievances to a grievance officer or the ARB. Instead, as required by the prison grievance protocol, Kyles submitted the Emergency Grievance to Defendant Warden Tarry Williams and the December 2014 Grievances to the responsible Stateville counselor by depositing them in the bars of his cell for pick up by the institutional mail service. Thus, the IDOC officials' statements do not contradict Kyles's sworn testimony regarding his timely submission of the grievances, and they fall far short of establishing that no reasonable trier of fact could conclude that Kyles did timely submit the grievances by depositing them in the bars of his cell. *See Anderson*, 477 U.S. at 255.

Moreover, even though Stateville never responded to Kyles's Emergency Grievance and December 2014 Grievances, Kyles persisted in notifying Stateville and Hill of his allegations by filing more grievances and sending letters. He sent Defendant Rabideau numerous letters about his placement with Pena while in segregation in October/November 2014. Kyles also filed additional grievances concerning the allegations in the Complaint in January 2015, February 2015, June 2015, March 2016, and April 2016, appealing the results of these grievances when he had the opportunity to do so.

In sum, there is a genuine dispute of material fact as to whether Kyles submitted the Emergency Grievance and December 2014 Grievances. Therefore, summary judgment for Defendants is inappropriate and the Motion must be denied. *See* FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

### B. KYLES EXHAUSTED HIS ADMINISTRATIVE REMEDIES BECAUSE STATEVILLE CONSIDERED THE MERITS OF HIS GRIEVANCES.

Because Stateville addressed the merits of Kyles's grievances when they finally responded to them, Defendants cannot claim that Kyles failed to exhaust his administrative remedies. "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). For instance, "if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (citations omitted); *see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Under Seventh Circuit law, Defendants' argument that Kyles's February 2015 Grievances did not exhaust his administrative remedies must fail because a counselor and

grievance officer chose "to consider the merits" of these grievances. *Conyers*, 416 F.3d at 584; *see also Riccardo*, 375 F.3d at 524. Indeed, both the Stateville counselor and Stateville grievance officer that reviewed Grievances 712 and 713 considered only the merits of those grievances and were silent on their timeliness. Plus, Kyles timely appealed these decisions to the IDOC ARB, which only then—for the first time—raised the timing of these grievances. (Pl. SOF No. 27; Pl. Ex. H & I.) "[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Riccardo*, 375 F.3d at 524. As such, "the ARB cannot reject the appeal of grievance officer and chief administrative officer's decision as untimely" and Kyles exhausted his administrative remedies in the February 2015 Grievances. *See Escobedo v. Miller*, No. 08-2017, 2009 WL 2605260, at *5 (C.D. Ill. Aug. 25, 2009) (denying summary judgment where counselor and CAO considered merits of grievance and ARB found it untimely).

Similarly, Defendants' argument that the multiple grievances filed by Kyles "did not put Defendants Durrett, Godinez, Baldwin, Lake, Laskey, Clements, Turner, and Lamb on notice as they did not name or identify them" is both illogical and contrary to Seventh Circuit law. (Def. Motion at 10.) Where the prison did not raise the plaintiff's failure to name defendants in a grievance during the administrative process and the lack of defendants' names "was a mere technical defect that had no effect on the process[,]" the plaintiff has exhausted his administrative remedies because the prison had "a fair opportunity to address his complaint." *Maddox*, 655 F.3d at 722; *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) ("providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement").

Here, prison officials did not reject any of Kyles's grievances on the "procedural grounds" of failure to identify the officials involved; therefore, the grievances served the function of providing Defendants adequate notice. *See Maddox*, 655 F.3d at 722. Furthermore, Kyles's grievances expressly concern the October 24, 2014 disciplinary ticket and related incident report issued to Kyles (which on its face bears the names of Defendants Beaugard, Laskey, Lake, Clements, Turner, and Williams), his improper placement in a segregation cell with Jorge Pena in connection with that ticket (which improper placement was approved by Defendants Rabideau and Williams, and directly discussed with Defendants Lamb, Durrett, and Brown), the practice at Stateville of housing PC inmates like Kyles in segregation with general population inmates (which improper practice has been condoned by Defendants Baldwin, Godinez, Williams, and Rabideau), and Pena's physical abuse of Kyles while in segregation (which Kyles expressly raised with Defendants Durrett, Brown, and Rabideau, including after Pena sexually assaulted him) (Pl. SOF Nos. 7, 14, 16-19, 21-22, 24, 28-29, 40; Pl. Ex. D, E, F, H, I, J & K; *see also* Def. Ex. 1 (Kyles's Fifth Amended Complaint).) As in *Maddox*, "it belies reason to suggest that prison administrators at [Stateville] were unaware of who was responsible for" the decisions to write Kyles the disputed ticket, place him in segregation with a general population inmate despite Kyles's PC status, and keep Kyles in segregation for an extra five days after the ticket was dismissed as unsubstantiated. 655 F.3d at 722. Therefore, Kyles exhausted his administrative remedies by giving Defendants adequate notice of his complaints in his myriad grievances. *See id.*; *Riley El v. Godinez*, Case No. 13 C 5768, 2016 WL 4505038, at *10 (N.D. Ill. Aug. 29, 2016) (finding plaintiff exhausted by satisfying the "lenient notice-pleading standard" of describing his complaint even though he did not name the defendant in the grievance).[5]

---

[5]Defendants' contention that Kyles should have known the names of all the Defendants when he

### C.  KYLES EXHAUSTED BECAUSE THERE IS NO TIME LIMIT FOR GRIEVING ALLEGATIONS OF SEXUAL ABUSE.

As Defendants concede, grievances regarding sexual assault have no time limit.  *See* 28 C.F.R. § 115.52(b)(1); Def. Motion at 2.  Under PREA, an "agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," but "[t]he agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an allegation of sexual abuse."  28 C.F.R. § 115.52(b)(1-2); *see* Def. Motion at 2.  However, Hill, where Kyles was incarcerated when he submitted the March and April 2016 Grievances, has chosen to implement a broader rule concerning grievances related to allegations of sexual abuse.  At Hill, there were—and still are—no time limits for grievances "related to allegations of sexual abuse."  (Pl. SOF No. 31; Pl. Ex. L & M.)  Further, unlike PREA, the rule that Hill adopted does not permit the parsing out of allegations contained within a grievance "related to" sexual abuse.  Hill does not define "related to" in its grievance procedure, but Black's Law Dictionary defines "related" as "[c]onnected in some way; having relationship to or with something else."  BLACK'S LAW DICTIONARY (10th ed. 2014).

Here, Kyles's March and April 2016 Grievances plainly include allegations related to sexual abuse and form the basis of Kyles's Complaint, including Counts I, VII, and IX.  Count I addresses retaliation taken against Kyles for complaints he made against Officer Juborek wherein

---

(continued…)

filed his grievances and speculation as to why he only remembered their names in an "epiphany . . . around the same [time] [sic] he was appointed counsel" should be disregarded as wrong and improper. (Def. Motion at 11.)  *First,* under Seventh Circuit law if the prison responded to the grievance on the merits, then a plaintiff exhausts his administrative remedies—even if the plaintiff did not name all defendants.  *See Maddox*, 655 F.3d at 722.  *Second,* in complaining about how Kyles twice amended his pro se pleadings without adding more Defendants, Defendants ignore "the well-known admonition that district courts must construe pro se pleadings liberally."  *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).  *Third,* in citing to previous iterations of the Complaint that have been "wipe[d] away", Defendants attempt to improperly use moot versions of a pleading against Kyles.  *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward.").

Defendants—among other things—"plac[ed] Kyles with an aggressive, Gangster Disciples-affiliated, general population cellmate (Jorge Pena) while Kyles was in segregation," and "kep[t] Kyles in segregation for at least five days after the disciplinary Ticket was found to be unsubstantiated and expunged." (Def. Ex. 1, Fifth Am. Compl., at ¶153.) Because of these retaliatory actions by Defendants, Kyles was sexually assaulted by Pena while held in segregation. Similarly, Count IX is a claim for Monell liability that alleges Defendants had a widespread practice of improperly placing general population inmates (like Pena) and PC inmates (like Kyles) together in segregation cells. (*Id.* at ¶199.) Count IX seeks relief from Defendants for housing Kyles in a segregation cell with Pena, as a result of the Stateville practice, that resulted in Kyles being sexually assaulted. Considering that Defendants' improper placement of Kyles in a segregation cell with Pena directly led to Kyles being sexually assaulted by Pena, the March and April 2016 Grievances—which have no time limit—plainly exhausted Kyles's administrative remedies for Counts I and IX.

Count VII is a claim for intentional infliction of emotional distress that alleges the totality of Defendants' misconduct was extreme and outrageous so as to cause Kyles to suffer severe emotional distress, including to suffer from post-traumatic stress disorder. (*Id.* at ¶¶109-10, 148, 187-90.) As an initial matter, Kyles's grieved his diagnosis of post-traumatic stress disorder and the mental anguish he was then suffering as a result of having been sexually assaulted on March 28, 2016, just 19 days after he received that diagnosis, and thus he has exhausted the grievance process on the intentional infliction of emotional distress claim. (Pl. SOF No. 32; Pl. Ex. R.) But in any event, certainly Pena's sexual assault of Kyles while Defendants improperly housed them together in segregation in retaliation for Kyles's complaint against Officer Juborek, and Defendants' then ignoring Kyles's pleas for help while in segregation with Pena, contributed to

both Defendants' misconduct being extreme and outrageous and the severe emotional distress inflicted on Kyles. Thus, even though Kyles timely filed grievances concerning the issues underlying his intentional infliction of emotional distress claim, there is no time limit for such grievances relating to allegations of sexual assault.

In sum, Kyles exhausted his administrative remedies for the entire Complaint by filing the March and April 2016 Grievances because these grievances were related to allegations of sexual assault and so are not subject to a time limit. (Pl. SOF No. 31; Pl. Ex. L & M.)

## IV.    CONCLUSION

For the reasons stated therein, the Court should deny Defendants' partial motion for summary judgment and find Kyles exhausted his administrative remedies for Counts I, VII, and IX of the Complaint.

Dated:  July 21, 2017                          Respectfully submitted,


                                               s/ Kelly M. Bonovich
                                               Michael S. Ferrell (06277458)
                                               mferrell@JonesDay.com
                                               Kelly Marino Bonovich (6293296)
                                               kbonovich@jonesday.com
                                               Sarah J. Gallo (6320644)
                                               sarahgallo@jonesday.com
                                               Juan C. Arguello (6320230)
                                               jarguello@Jonesday.com
                                               JONES DAY
                                               77 West Wacker
                                               Chicago, IL  60601.1692
                                               Telephone:    +1.312.782.3939
                                               Facsimile:    +1.312.782.8585

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff Timothy Kyles's Memorandum in Opposition to Defendants' Rule 56 Partial Motion for Summary Judgment has been filed electronically on July 21, 2017. Notice of this filing will be sent to all active parties by operation of the Court's electronic filing system, which will send notification of such filing by email to all counsel of record in the above-captioned proceeding.

/s/ Sarah J. Gallo