# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY KYLES, | ) |
| Plaintiff, | ) |
| | ) Case No. 15 C 8895 |
| v. | ) |
| FRED BEAUGARD, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 30, 2016, Plaintiff Timothy Kyles, by counsel, filed a nine-count Fifth Amended Complaint against individuals employed by the Illinois Department of Corrections ("IDOC") alleging violations of his constitutional rights, as well as state law claims, that occurred while he was incarcerated at Stateville Correctional Center ("Stateville"). *See* 28 U.S.C. §§ 1331, 1367(a). On June 13, 2017, the Court granted in part and denied in part Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). The remaining claims in this lawsuit include: (1) a First Amendment retaliation claim (Count I); (2) Eighth Amendment failure to protect claims (Counts II and III); (3) an Eighth Amendment medical care claim (Count IV); (4) an Eighth Amendment failure to intervene claim (Count V); (5) a state law intentional infliction of emotional distress ("IIED") claim (Count VII); and (6) a policy claim styled as a *Monell* claim (hereinafter "policy claim") (Count IX).

Before the Court is Defendants' Rule 56(a) motion for partial summary judgment based on Kyles' alleged failure to exhaust his available administrative remedies in a timely fashion pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In their motion,

Defendants do not argue that Kyles failed to exhaust his administrative remedies as to his Eighth Amendment claims alleged in Counts II through V due to the regulations promulgated pursuant to the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601-15609, which do "not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse." 28 C.F.R. § 115.52(b)(1). Instead, Defendants argue that Kyles did not exhaust his First Amendment retaliation claim (Count I), his IIED claim (Count VII), and his policy claim (Count IX). Because the PLRA's exhaustion requirement does not apply to state law claims, the Court denies Defendants' motion in relation to Kyles' IIED claim as alleged in Count VII. *See McDaniel v. Meisner*, 617 Fed. Appx. 553, 556 n.3 (7th Cir. 2015) (unpublished) ("the exhaustion requirements of the Prison Litigation Reform Act do not apply to state-law claims"). Therefore, the Court will discuss whether Kyles properly exhausted his First Amendment retaliation and policy claims in this ruling.

On August 31, 2017, the Court held an evidentiary hearing under the dictates of *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). *See Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015) ("The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion, including what steps were taken and whether the futility exception might apply.").[1] The following witnesses testified at the *Pavey* hearing: (1) Plaintiff Timothy Kyles; (2) Anna McBee, via video-conference, who is a correctional counselor and grievance officer at Stateville; and (3) Sherry Benton, the chairperson of IDOC's Administrative Review Board. During the

---

[1] Although the Seventh Circuit has reasoned that "it is better practice to hold a *Pavey* hearing separate from and before considering a motion for summary judgment," *see Wagoner v. Lemmon,* 778 F.3d 586, 593 (7th Cir. 2015), because Defendants' motion for partial summary judgment only concerns exhaustion – and not the merits of Plaintiff's claims – any chance of confusion is negligible.

2

hearing, the Court had the opportunity to assess each witness' credibility. The parties also offered numerous exhibits into evidence that the Court discusses below.

Based on the following, Defendants have not fulfilled their burden of establishing that Kyles failed to exhaust his administrative remedies as to his First Amendment retaliation claim as alleged in Count I and his policy claim in Count IX. *See Pyles v. Nwaobasi*, 829 F.3d 860, 869 (7th Cir. 2016). Nonetheless, the Court dismisses Defendant Salvador Godinez as to Kyles' policy claim in Count IX because he is no longer employed by IDOC and Kyles cannot obtain money damages against Defendant Godinez based on Eleventh Amendment immunity, as discussed in detail below.[2] The Court therefore grants in part and denies in part Defendants' motion for partial summary judgment.

## BACKGROUND

### I. First Amendment Retaliation Claim

Defendants first argue that Kyles did not exhaust his First Amendment retaliation claim as alleged in Count I of his Fifth Amended Complaint. Based on the *Pavey* hearing testimony and exhibits admitted into evidence, Kyles' First Amendment retaliation claim is based on an alleged October 24, 2014 threat made by Stateville Correctional Officer Derek Jaburek, who is not a Defendant to this lawsuit. In particular, Kyles asserts that Officer Jaburek threatened him by saying he was going to place contraband in Kyles' cell. Further, Kyles testified that immediately following this incident, he lodged a complaint about Officer Jaburek in a statement to Internal Affairs via a verbal complaint to Defendant Officer Fred Beugard. Thereafter, Kyles contends that certain Defendants issued him a false disciplinary ticket in retaliation for his

---

[2] Because Kyles is suing Defendant John Baldwin, IDOC's Acting Director, in his official capacity for prospective injunctive relief, he is the proper defendant for Kyles' policy claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (per curiam).

complaints about Officer Jaburek. In particular, on October 25, 2014, Defendant Beaugard issued Kyles a disciplinary ticket for "intimidation or threats" and "dangerous communications." (Hr'g. Ex. 23.) After conducting a hearing at which Kyles attended, the Adjustment Committee expunged the disciplinary ticket as unsubstantiated on November 5, 2014.

In the interim, while Kyles awaited the hearing on the disciplinary ticket, he maintains that certain Defendants further retaliated against him by placing him in double-cell segregation with a violent general population inmate, Jorge Pena, who was affiliated with the Gangster Disciples – despite the fact of Kyles' mental illness and his protective custody ("PC") status related to the Gangster Disciples. While housed in double-cell segregation with Pena, Kyles asserts that Pena physically assaulted and raped him.

**II.     Policy Claim**

Next, Defendants argue that Kyles has failed to exhaust his policy claim as alleged in Count IX of his Fifth Amended Complaint. As Defendants pointed out at the *Pavey* hearing, Kyles' claim against IDOC, an agency of the State of Illinois, does not necessarily fit under the *Monell* rubric. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). That being said, Kyles may bring a policy claim against IDOC, keeping in mind that he cannot recover monetary damages due to Eleventh Amendment immunity, although the Eleventh Amendment does not bar his request for prospective injunctive relief. *See Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) ("Official-capacity suits against state officials seeking prospective relief are permitted by § 1983").

In Count IX, Kyles alleges that there is a widespread custom or practice at Stateville to double-cell PC inmates with general population inmates when they are detained during investigations and that this policy contravenes Defendants' Eighth Amendment duty to protect. Furthermore, Kyles maintains that this policy led to his assignment with Pena, who raped and abused him while he awaited the Adjustment Committee hearing regarding his October 2014 disciplinary ticket.

## LEGAL STANDARD

In the present motion, Defendants argue that Kyles has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). The "benefits of exhaustion … include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). More specifically:

> Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (internal citations omitted).

Failure to exhaust under the PLRA is an affirmative defense that Defendants must prove, *see Hernandez v. Dart,* 814 F.3d 836, 840 (7th Cir. 2016), because "[u]nexhausted claims are

5

procedurally barred from consideration." *Pyles*, 829 F.3d at 864; *see also Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). "The PLRA does not, however, demand the impossible," and thus, "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Pyles,* 829 F.3d at 864; *see also Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017) ("Obviously prisoners can't be required to exhaust remedies that are unavailable to them[.]"). "A remedy becomes unavailable 'if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Pyles,* 829 F.3d at 464 (citation omitted).

Each state sets its own prison grievance system, *see Jones*, 549 U.S. at 218, and "[a] prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015). "Illinois has created a three-stage process for its inmates." *Pyles,* 829 F.3d at 864; *see also* 20 Ill. Admin. Code § 504.800, *et seq*. "Step one requires the inmate to attempt to resolve the problem through his or her counselor." *Pyles,* 829 F.3d at 864. "If that does not resolve the problem, the inmate must invoke step two, which involves the filing of a written grievance with a grievance officer … within 60 days after discovery of the problem." *Id.*; *see also Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014) ("a grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance."). If the grievance officer denies the grievance and the chief administrative officer (usually the warden) affirms the denial, the inmate may then appeal the decision to the Illinois Administrative Review Board ("ARB"), which is an entity within IDOC that has statewide jurisdiction. *See Pyles*, 829 F.3d at 864.

Alternatively, when an inmate believes he is raising an emergency issue, he may bypass the counselor and grievance officer and submit his grievance directly to the chief administrative officer. *See* 20 Ill. Admin. Code § 504.840; *Roberts*, 745 F.3d at 236. If the chief administrative officer agrees that the grievance relates to an emergency, namely, an issue presenting "a substantial risk of serious personal injury or other serious irreparable harm to the offender," *see Roberts,* 745 F.3d at 236, prison staff will then expedite the grievance process. If the chief administrative officer concludes that the grievance does not present an emergency, the inmate may then appeal that denial to the ARB on an expedited basis. *See id.* at 235; *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); 20 Ill. Admin. Code § 504.850(f).

**ANALYSIS**

I.  **Stateville's Exhaustion Protocol**

In their motion, Defendants specifically argue that Kyles failed to file his grievances concerning his First Amendment retaliation claim and policy claim "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." *See* 20 Ill. Admin. Code § 504.810(a). In relation to Defendants' motion for partial summary judgment, the parties presented evidence through their Northern District of Illinois Local Rule 56.1 Statements – many of which are undisputed. The parties' Rule 56.1 Statements, along the *Pavey* testimony, necessarily mirror the requirements set forth by 20 Ill. Admin. Code § 504.800, as discussed above. More specifically, the protocol at Stateville includes that an inmate may fill out a grievance form and deposit it in the bars of his cell for pick-up by the institutional mail service for delivery to a counselor. Under this first stage, an inmate may also deliver the grievance to his counselor in person. Normally, after the counselor reviews the grievance, he or she writes a

7

response and returns the original grievance to the inmate. If the inmate is dissatisfied with the counselor's response, he may then submit the grievance to a grievance officer for review. After the grievance officer reviews the grievance, she forwards her conclusions to Stateville's warden, who is the chief administrative officer. Also, if a grievance concerns an emergency situation, Stateville staff directly forward the grievance to the chief administrative officer. If the chief administrative officer or his delegate decides there is no emergency, they return the grievance to the grievance officer. After receiving the chief administrative officer's decision – in either an emergency or non-emergency situation – if the inmate is not satisfied with the result, he may appeal the decision to the ARB.

## II.    Relevant Grievances

### A.    First Amendment Claim

#### 1.    December 2014 Grievances

The incident concerning Officer Jaburek and the resulting events related to Kyles' First Amendment retaliation claim started on October 24, 2014. Defendants argue that the evidence in the record, most notably the grievance office's log, shows that Kyles did not file any grievances about the October 24, 2014 through November 2014 events resulting in his detention with Pena until February 2015 – well after the 60 day time period required by 20 Ill. Adm. Code § 810(a). Kyles, on the other hand, testified that he submitted three grievances about the October and November 2014 events on December 22, 2014, which is within the 60 day time period. He also testified that he placed these grievances in the bars of his cell for pick-up. Furthermore, Kyles stated that he did not receive responses to these grievances and that it was not the first time during his incarceration that he had not received such responses from his IDOC counselors. Also

8

at the evidentiary hearing, Kyles testified that he remembers that he filed these grievances on December 22, 2014 because it was his birthday. He also explained that he could not photocopy his December 2014 grievances because the Stateville law library will not photocopy grievances unless the inmate's counselor has responded and signed the grievance form. Defendants did not present any evidence rebutting the law library's photocopying policy.

      Anna McBee, a correctional counselor and grievance officer at Stateville, testified at the hearing about the process in which Stateville grievance officers log inmate grievances. In particular, the grievance office maintains an Excel spreadsheet logging all of the grievances it receives after the inmate's counselor has signed off on the grievance. She explained how grievance officers date-stamp grievances and then assign them a number. Further, she testified that the Stateville grievance office processes over six thousand grievances a year. Importantly, she acknowledged that a grievance officer only logs the grievances that she receives after a counselor has signed off on the grievance at the conclusion of the first stage of the grievance process. Equally important, McBee testified that initial inmate grievances placed in the bars of an inmate's cell may get lost in the institutional mail or even destroyed. McBee further explained that in the last several years, Stateville has had numerous counselor vacancies resulting in temporary counselors and that, at times, inmates may not have had an officially assigned counselor. In addition, McBee testified that if an inmate does not get a response from his counselor, he should inquire about the lack of response by writing the grievance office or writing another grievance to his counselor.

      **2.     February 2015 Grievances**

The parties do not dispute that Kyles filed grievances dated February 17, 2015 that the grievance office time-stamped on February 23, 2015. (Hr'g Exs. 3, 5, 10.) To give context, Kyles explained that Stateville assigned him a new counselor in February 2015, and that he handed his February 2015 grievances directly to his new counselor because she was on his wing. The grievance office assigned the grievances numbers 711, 712, and 713. (Hr'g Exs. 3, 5, 10.) Kyles' grievance 711 states that he turned in grievances on December 22, 2014 and that he never received a response. (Hr'g Ex. 3.) Kyles attached grievances 712 and 713 to grievance 711 explaining that these two grievances were the ones he sent on December 22, 2014. (*Id*.) The parties agree that grievance 712 is a "re-write" of the grievance Kyles filed on December 22, 2014 about Defendant Beaugard (hereinafter "Beaugard grievance"). (R. 169, Defs.' Rule 56.1 Stmt. Facts ¶ 32.) The Beaugard grievance states:

> On October 24th 2014 I went to Fred Beaugard a C/O at Stateville CC for help about another C/O picking at me trying to provoke me. I was told by my doctors to report to a C/O if I felt provoked by anybody; and they would come see me. I do take psychotropic drugs for Parinoia Skizoo [sic] with Psyco [sic] Features. And I went to him and requested help. And he wrote me a ticket, and I was placed in seg for 206 Intimidation or Threats and Dangerous Communications, which was expunged from my record. Administrative Laris and Sinor and Warden T. Williams said that it was not right what happen [sic] to me and I was let out of seg after 17 days. Note this is my second grievance on this issue. Just would like a response that I can further proceed.

(Hr'g Ex. 5.)

Likewise, the parties agree that Kyles' grievance 713 is a "re-write" of a grievance he sent on December 22, 2014 in relation to Defendant Karen Rabideau (hereinafter "Rabideau grievance"). (Defs.' Stmt. Facts ¶ 34.) Defendant Rabideau is Stateville's placement officer responsible for inmate cell assignments. The Rabideau grievance states:

10

> On the date of 11-5-14, I was released from seg due to mistreatment of the rules by staff. On a Wednesday, K. Rabideau was the Placement Officer. Lt. Brown was the Lt in F-Hoes and he told me that K. Rabideau said I'll be out Thursday. Thursday came around C/O Hail said that it was changed to Friday 7th. I still was not released from seg. It was not until Monday the 10th of November. Rabideau Placement C/O did this on purpose. I spent a [sic] extra 5 days in Solitary Confinement out of hate by her. Just would like a responds [sic] so that I can further my complaint / *note this is my second grievance on this issue.

(Hr'g Ex. 10.) It is undisputed that Kyles' new counselor, his grievance officer, and the chief administrative officer addressed the merits of the Rabideau and Beaugard grievances. Also, evidence shows that Kyles appealed the Rabideau and Beaugard grievances, but that the ARB dismissed these appeals as untimely without discussing the merits of the grievances.

Under these circumstances, Defendants have not met their burden of establishing that Kyles failed to exhaust his First Amendment retaliation claim within the 60 day time period required by § 504.810(a). More specifically, Kyles testified that he submitted three grievances on December 22, 2014 – which was within the 60 day time period – concerning the October-November 2014 events underlying his retaliation claim, yet he did not get responses to these grievances, and that this was not the first time he did not get responses from grievances he had filed with an IDOC counselor. Kyles' testimony that he has not received responses to his grievances in the past is corroborated by McBee's testimony that grievances can get lost in the institutional mail or even get destroyed. Also relevant to the Court's analysis is that during this time period, Stateville was experiencing a shortage of counselors and some of inmates may not have had their own designated counselor to receive grievances. Kyles testified at the *Pavey* hearing that he re-filed the December 2014 grievances again in February 2015 because Stateville assigned him a new counselor in February. He further stated that he handed his February 2015 grievances directly to his new counselor because she was on his wing and that he had the

11

February 2015 grievances available because he had been working on re-submitting them – a practice condoned by McBee. In addition, although the grievance office keeps a log of grievances filed with the counselor's response and signature, there is no official log for the first stage of the grievance process, namely, logging inmates' initial grievances sent to their counselors. As such, the fact Kyles' December 2014 grievances were not on the grievance office's log is not compelling enough evidence, alone, to support Defendants' argument that Kyles did not file his December 2014 grievances. In fact, it is consistent with Kyles' testimony that he never received a response to his December 2014 grievances. Moreover, McBee testified that if an inmate does not receive a response from his counselor, he should inquire about the lack of response by writing the grievance office or writing another grievance to his counselor – which is what Kyles did when he filed his February 2015 grievances. Based on this evidence, Defendants have not met their burden in establishing Kyles' failure to exhaust his First Amendment retaliation claim, and thus he may proceed with Count I in this lawsuit.

    **C.    Policy Claim**

        **1.    January 2015/June 2015 Grievances**

On June 24, 2015, Kyles filed a grievance directly to the ARB regarding his policy claim stating that PC "inmates were being housed with general population inmates in the segregation unit" while they are "under investigation" or have "temporary confinement status." (Hr'g Ex. 15.) He further stated that he is a PC status inmate and that he was placed in segregation with Jorge Pena, who was a general population inmate. (*Id*.; *see also* Hr'g Ex. 14.) The grievances stated that Pena had physically abused him. (*Id*.) These grievances, however, did not state that Pena sexually assaulted Kyles as his March and April 2016 grievances did, discussed below. At

12

the *Pavey* hearing, Kyles testified that he had first filed the June 2015 grievance on January 19 or January 20, 2015, but that he had not heard back from his counselor, so he filed them again.[3]

Assuming that Kyles filed these grievances on January 19 or 20, and that he never received a response, Kyles does not explain how these grievances are timely under the 60 day requirement pursuant to 20 Ill. Adm. Code § 810(a). To clarify, it is undisputed that the alleged misconduct took place starting on October 24, 2014 and ending on November 10, 2014. Thus, his January 19 and 20, 2015 grievances fall outside the relevant 60 day window. Moreover, although Kyles highlights two letters – dated October 27, 2014 and November 3, 2014 – that he sent to Defendant Rabideau about his PC status and being housed in segregation with a gang member, these letters were not proper grievances. Moreover, evidence in the record reveals that Kyles was no stranger to Stateville's grievance protocol, and at the *Pavey* hearing, he testified that he knew how to properly file grievances.

## 2. March/April 2016 Grievances

On September 23, 2015, IDOC transferred Kyles from Stateville to Hill Correctional Center in Galesburg Illinois. On March 28, 2016, Kyles submitted an emergency grievance to Hill's warden with a copy to Defendant Baldwin, who is the Acting IDOC Director. The March 2016 emergency grievance stated:

> On or about October 2014, I was a [sic] inmate at Stateville CC classified as a [sic] approved Protective Custody inmate, also deemed mentally ill by health care professionals. I was placed in temporary confinement with a general population inmate who beat me and raped me while I was on my medication, at that time my medication was Rispidal, Rimmrum, and Tegretall. I couldn't help myself. Placing me in seg was done in retaliation for reporting staff to I.A. (Internal Affairs) and the displinary [sic] ticket states this. I reported the beating and rape

---
[3] In his response brief, Kyles explains he is not arguing that the June 2015 grievances exhausted his administrative remedies, but that they show his persistence in pursuing his claims. (R. 192, Resp. Brief, at 5 n.3.)

> to staff. I was laughed at and nothing was done. I was released from temporary confinement and placed back in Protective Custody because the ticket was expunged (not guilty). I tryed [sic] several times to report this issue by way of grievances, by sending grievances to Springfield only to have them returned. I then filed a civil complaint Kyles v. Beaugard et al., Case No. 1:15-CV-08895. That's pending now. I was transferred here to Hill CC where I talked to [a] mental health care professional, by way of video satellite where I told my issue to my doctor. Since I've been diagnosed as having P.T.S.D. Post Tramatic [sic] Stress Disorder and I'm taking medication for that also Zoloft 100mg. Because its [sic] like I'm reliving what happen [sic] to me at Stateville CC over and over again. The hate is building. I don't trust my cell-mates, I can't sleep and I'm having thoughts of hurting one of them. I need help.

(Hr'g Ex. 17.) The ARB reviewed this March 2016 grievance concluding that it was untimely.

(Hr'g Ex. 18.) On April 22, 2016, Kyles submitted another grievance directly to IDOC Director Baldwin that stated:

> On or about October 2014 I was a [sic] inmate at Stateville Correctional Center, classified as a [sic] approved Protective Custody inmate. Also deemed mentally ill by mental health care professionals. And was told if I had a problem with staff or inmates to report it with a staff member and I'll be helped. On or about October 2014, I was being harassed by C/O Juborek so I reported him to C/O Beaugard, Fred, who was a part of Internal Affairs. He told me he would take care of my problem, but later he wrote me a displinary [sic] ticket in retaliation for reporting another officer. I was placed on temporary confinement and place [sic] in population seg with a general population inmate. (Karen Rabideau) was the placement officer and she knew I was a Protective Custody inmate also mentally ill and she knew according to the rules administrative [sic] that she could not house a [sic] inmate that's in Protective Custody and mentally ill in the same cell with general population. But did anyway, and while I was in that cell I was beat [sic] and raped while on my medication. I was on Taratol, Rispidin, and Ridrum at that time. I report the rape to Lt. Brown the [illegible]. He told me to stop lieing [sic] big as you are. I also told Sgt. Durrant [sic]. He laugh [sic] at me and said 'This is what happen [sic] to P.C. mother fuckers who report my officers to IA (Internal Affairs). This is my 8th grievance filed on this issue. Since I've been diagnosed as having P.T.S.D. I'm taking medication now. But it's like I'm reliving what happen [sic] to me over and over again. I can't sleep and I don't trust my cellmates when I take my medication cause [sic] what happen [sic] to me. I'm now sending this grievance to Director John Baldwin certified mail from Hill Correctional Center.

14

(Hr'g Ex. 19.)  At the *Pavey* hearing, Kyles testified that he sent this grievance directly to Defendant Baldwin because it contained allegations of sexual abuse.  Further, Kyles testified that Defendant Baldwin accepted the grievance.  In response to his April 2016 grievance, IDOC conducted a Prison Rape Elimination ("PREA") investigation, and based on the findings of the investigation, the ARB and IDOC denied Kyles' April 2016 grievance on the merits as "unfounded."  (Hr'g Ex. 20.)  An ARB representative and Acting IDOC Director Baldwin signed the August 23, 2016 letter denying Kyles' grievance on the merits.  (*Id*.)

Recognizing the untimeliness of these March and April 2016 grievances, Kyles argues that he need not exhaust his remedies as to his policy claim because – like his Eighth Amendment claims – these grievances fall under the PREA's regulations that do "not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," *see* 28 C.F.R. § 115.52(b)(1), as well as Hill Correctional Center's inmate handbook.  Kyles' policy claim, however, is not necessarily "related to" his sexual abuse allegations.  Under the circumstances, Kyles' better argument is that he exhausted his policy claim because the ARB/IDOC resolved his April 2016 grievance on the merits – as evidenced by the investigation into his complaints and the ARB's and IDOC's August 23, 2016 letter concluding that his grievance was "unfounded."  *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits.").  As the Seventh Circuit teaches, "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."  *Maddox v. Love*, 655 F.3d 709, 722

(7th Cir. 2011). Here, because the ARB/IDOC considered the merits of Kyles' grievance that included his allegations of being a mentally ill PC inmate who was placed in segregation with a general population inmate, Defendants have failed in their burden of establishing that Kyles did not exhaust his policy claim. *See Pyles,* 829 F.3d at 869. Accordingly, the Court denies Defendants' summary judgment motion as to Kyles' policy claim as alleged in Count IX.

### III. Notice to Defendants

Defendants also argue that Kyles did not exhaust his administrative remedies as to the individual Defendants Tralon Durrett, Maurice Lake, Kevin Laskey, Joshua Clements, Leslie Turner, and Nicholas Lamb because Kyles did not put them on notice by specifically naming each Defendant in his grievances. The Illinois Administrative Code requires the following:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(c).

Despite Defendants' argument to the contrary, the main purpose of the PLRA's exhaustion requirement is to alert prison officials to an inmate's problem – not to provide personal notice to individual officials that they may be subject to litigation. *See Jones,* 549 U.S. at 219; *Maddox,* 655 F.3d at 722. As the Seventh Circuit teaches, "[w]e and the majority of the circuits have never endorsed [] the defendants' invitation to engraft onto § 1997e(a) a requirement that defendants to a civil suit be first named in an inmate's prison grievance." *Dye v. Kingston*, 130 Fed. Appx. 52, 55 (7th Cir. 2005) (unpublished). As such, the fact that Kyles "didn't specifically name the defendants in the grievance was a mere technical defect that had no

16

effect on the process and didn't limit the usefulness of the exhaustion requirement," *see Maddox*, 655 F.3d at 722, especially because he sufficiently described the alleged misconduct alerting Stateville and IDOC to the nature of the alleged wrongs. *See, e.g., Fleming v. Illinois Dep't of Corr.*, No. 16 CV 50074, 2017 WL 1833207, at *4 (N.D. Ill. May 8, 2017); *Cooper v. Morgan*, No. 12 C 05625, 2016 WL 1181793, at *4 (N.D. Ill. Mar. 28, 2016); *Zirko v. Parthasarathi Ghosh, M.D.*, No. 10 C 08135, 2015 WL 6447768, at *9 (N.D. Ill. Oct. 26, 2015); *Harris v. Allen*, No. 10-CV-0596-MJR-SCW, 2012 WL 2884789, at *5 (S.D. Ill. July 13, 2012). Also, Stateville staff and ARB/IDOC did not reject Kyles' grievances on the grounds that he inadequately identified those involved in the alleged misconduct. *See Cooper,* 2016 WL 1181793, at *5. Accordingly, Defendants' "notice" argument fails.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' Rule 56(a) motion for partial summary judgment.

**Date:** September 18, 2017

                                     **ENTERED**

                                     **AMY J. ST. EVE**
                                     **United States District Court Judge**