**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY KYLES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-8895 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| FRED BEAUGARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Timothy Kyles was an inmate at Stateville Correctional Center when officials allegedly retaliated against him for filing an internal complaint. He later filed this action under federal and state law against Illinois Department of Corrections employees in their individual capacities, and against its Director in his official capacity.

Kyles transferred out of Stateville in 2015, shortly before filing suit. He remains in the custody of the Illinois Department of Corrections, but he is now housed at Pontiac Correctional Center. He has not been permanently housed at Stateville for more than seven years.

Kyles left Stateville long ago. Even so, the complaint includes a claim for prospective injunctive relief against the IDOC Director in his official capacity. Kyles alleges that Stateville has an unconstitutional policy when it comes to employee discipline and cell assignments. And he wants an injunction to change it. He challenges the policy at a prison, even though he is no longer there.

Defendants moved to dismiss the claim against the IDOC Director in his official capacity. They argue that the claim is now moot because Kyles is incarcerated elsewhere. For the reasons explained below, the motion is granted.

**Background**

This lawsuit arises out of events that occurred in 2014 at Stateville Correctional Center, a maximum-security facility operated by the Illinois Department of Corrections ("IDOC"). *See* 11/18/20 Order, at 1 (Dckt. No. 367). Plaintiff Timothy Kyles, a prisoner in IDOC custody and formerly an inmate at Stateville, alleges that prison officials retaliated against him for filing an internal complaint against a prison officer. *Id.*

At the time, Kyles was in protective custody, meaning that he was housed separately from the prison's general population out of fear for his safety from other inmates. *Id.* at 2. Kyles claims that he sought protective custody status because, among other things, he had disavowed his former gang. *Id.*

As part of the alleged retaliation for filing the internal complaint, Kyles asserts that he lost his protective custody status. *Id.* at 3–5. He alleges that IDOC subsequently celled him with a hostile inmate who raped him and otherwise abused him. *Id.* at 4–5.

A little less than a year later, Kyles brought this action under 42 U.S.C. § 1983 and Illinois law. *See* Cplt. (Dckt. No. 1). Since then, he has amended his complaint five times. (Dckt. Nos. 1, 9, 48, 72, 86, 295). The sixth amended complaint is the operative pleading.[1]

Kyles brings seven counts. *See* Sixth Am. Cplt. (Dckt. No. 295). The motion to dismiss is about the last count, an official capacity claim.

The first six counts are against various IDOC officers and employees in their individual capacities. The claims include: (1) retaliation under the First Amendment (Count I); (2) failure to protect under the Eighth Amendment (Counts II and III); (3) deliberate indifference to serious

---

[1] For purposes of conformity with the docket entries in this case, the Court refers to the operative complaint as the sixth amended complaint. However, the Court notes that Kyles has amended his complaint only five times. He labeled his second amended complaint as the "Third Amended Complaint," hence the miscount. (Dckt. No. 44).

medical needs under the Eighth Amendment (Count IV); (4) failure to intervene under the Eighth Amendment (Count V); and (5) intentional infliction of emotional distress (Count VI). *Id.*

The last count (Count VII) is a policy claim against the IDOC Director in his official capacity.[2] Kyles alleges that Stateville has an institutional policy of stripping prisoners of their protective custody status and celling them with general-population inmates simply because they are under investigation for committing a disciplinary infraction. *Id.* at ¶¶ 181–83; 11/18/20 Order, at 20 (Dckt. No. 367).

At summary judgment, Judge Lee (this Court's predecessor, before reassignment) construed Count VII as seeking only prospective injunctive relief against the allegedly unconstitutional policy at Stateville. *See* 11/18/20 Order, at 20–21 (Dckt. No. 367). "[T]he Court construes Count VII as seeking prospective injunctive relief against an allegedly unconstitutional policy." *Id.* at 21. That ruling piggy-backed on a similar ruling by Judge St. Eve, before her elevation to the Seventh Circuit. *See* 9/8/17 Mem. Opin. & Order, at 4–5 (Dckt. No. 216).

Kyles left Stateville shortly before filing suit. *See* Kyles Movement History, at 2 (Dckt. No. 495-1). He was transferred out of that facility on September 23, 2015, and filed suit on October 6, 2015. *Id.* He has not been permanently housed at Stateville since 2015. *Id.*

In that time, Kyles has moved around within the IDOC constellation of facilities, changing locations five times. He has had stints at Hill Correctional Center, Illinois River Correctional Center, Lawrence Correctional Center, and Pinkneyville Correctional Center. *Id.* He is now housed in protective custody at Pontiac Correctional Center, another maximum-

---

[2] Current IDOC Director Rob Jeffreys is now substituted for former Director John Baldwin as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

security facility like Stateville. *Id.* Kyles estimates that he has seven to ten years remaining in IDOC custody. *See* Pl.'s Resp., at 3 (Dckt. No. 498).

Defendants moved to dismiss Count VII for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Defs.' Mtn. to Dismiss (Dckt. No. 494). They argue that the claim is moot.

Count VII is against only one defendant: Defendant Baldwin, the IDOC Director, in his official capacity. *See* Sixth Am. Cplt., at ¶¶ 181–83 (Dckt. No. 295). But for whatever reason, all Defendants moved to dismiss.

## Legal Standard

When addressing a motion to dismiss for lack of subject matter jurisdiction, the Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the [non-moving party]." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). That said, the Court may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

## Analysis

Before addressing the merits of mootness, there is one threshold issue. Plaintiff thinks that it is too late to raise an argument about mootness. Not so. Subject matter jurisdiction is never too late.

Kyles argues that Defendants' motion is improper because it comes too late in the game. Kyles points out that more than three years have passed since this Court's deadline for

4

dispositive motions. *See* Pl.'s Resp., at 4–5 (Dckt. No. 498). And he notes that the motion is "contrary to the parties' Final Pretrial Order filed with the Court that includes Kyles's policy claim." *Id.* at 5.

The argument is a nonstarter. Parties may raise an objection to the Court's subject matter jurisdiction at any time, and if not raised by the parties, the Court can raise it *sua sponte*. *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) ("[I]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings.") (quoting *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980)).

A federal court can cut the cord on any claim, at any time, if it lacks subject matter jurisdiction over that claim. In fact, the court not only can, but *must* cut loose a claim if it lacks jurisdiction. *See Bhd. of Maint. of Way Emp. Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 812 n.3 (citing Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

The reason is simple. Subject matter jurisdiction is about a court's power to hear a case. Without power, the court can do nothing. So, when it comes to dismissing a claim for lack of subject matter jurisdiction, the time is always now.

Count VII is a policy claim that takes aim at an allegedly unconstitutional policy at Stateville Correctional Center. *See* Sixth Am. Cplt., at ¶ 182(e) (Dckt. No. 295) ("The aforementioned policies, practices, and customs . . . have been maintained and/or implemented with deliberate indifference by Defendant Baldwin, have encouraged other Defendants to commit the aforesaid wrongful acts against Kyles . . . at *Stateville CC*, and, therefore, constitute a direct and proximate cause of the complained of constitutional violations and injuries.")

(emphasis added). And again, at summary judgment, Judge Lee construed this claim as seeking only prospective injunctive relief. *See* 11/18/20 Order, at 21 (Dckt. No. 367).

Defendants argue that the Court lacks subject matter jurisdiction over Count VII because Kyles transferred out of Stateville years ago. *See* Defs.' Mem. in Support of Mtn. to Dismiss, at 1 (Dckt. No. 495). In their view, his transfer from Stateville means that the Court is unable to grant him injunctive relief about any alleged polices or practices at that facility. *Id.*

"Federal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011); *see also Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994) ("Where the plaintiff no longer has a personal stake in the case, the Court has no subject-matter jurisdiction, because the case is moot.").

In the prisoner context, it is well-settled that "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir. 1988)). Federal courts are not in the business of enjoining prison policies if the inmate isn't in that prison.

The idea is that, where there is no realistic possibility that a prisoner will be reincarcerated at that same facility and subject to the same actions, any prospective relief would be "purely speculative in nature." *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009); *see also Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."). An injunction would not give a prisoner any relief unless the prisoner is in *that prison*.

To defeat an argument about mootness, a prisoner must show a "realistic possibility that he will again be incarcerated in the same facility and therefore subject to the same actions of which he complains here." *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). "Allegations of a likely retransfer may not be based on mere speculation." *Higgason*, 83 F.3d at 811.

Here, Kyles no longer resides at Stateville. *See* Kyles Movement History, at 2 (Dckt. No. 495-1). He has not been housed there since September 2015. *Id.* In fact, he left Stateville shortly before filing this lawsuit in October 2015. *See* Cplt. (Dckt. No. 1) (showing a filing date of October 6, 2015).

Moreover, Kyles has put forward no evidence showing a realistic possibility of a return to Stateville. Kyles has been transferred to other facilities in the seven years since he left Stateville, but he has never returned there on a permanent basis. *See* Kyles Movement History, at 2 (Dckt. No. 495-1). The Court sees nothing to suggest that Kyles is headed back to Stateville anytime soon (or ever). As a result, the Court dismisses Count VII as moot.

Kyles responds with several arguments, but they do not show a live controversy. Kyles has not shown any non-speculative likelihood that he will return to Stateville and once again become subject to its policies and practices. He can't get an injunction about a place where he isn't.

Kyles first points out that he has seven to ten more years remaining in IDOC custody. *See* Pl.'s Resp., at 3 (Dckt. No. 498). During that time, Kyles "will continue to be subject to IDOC choosing at their whim to transfer him back to Stateville for one or more additional stints, where Kyles would again be subject to the same complained of unconstitutional policy." *Id.* Making this all the more likely, according to Plaintiff, is the fact that Kyles has been housed on

and off at Stateville six different times throughout his incarceration. *Id.* at 7. In short, Kyles argues that IDOC could put him back in Stateville at any time, just as it has done before.

This argument focuses only on where Kyles has been *before*. When it comes to mootness, the question is not where you've been, but where you are, and where you're headed. The fact that IDOC has transferred Kyles in and out of Stateville in the past is not enough. *See Serio v. Rauner*, 2018 WL 4409389, at *6 (N.D. Ill. 2018) (cleaned up) ("Plaintiff speculates that he could be transferred at any time to another prison, including Menard, because he has been transferred among various prisons 'five times in as many years' and is serving a 50-year sentence. However, there is nothing before the Court to suggest that a transfer to Menard is imminent, and allegations of a likely retransfer may not be based on mere speculation."). Maybe there is a revolving door at IDOC, but he needs to be inside the door of Stateville to challenge the policies there.

Kyles must put forward evidence showing that he is reasonably likely to return to Stateville. Kyles has made no such showing. For example, he has not offered any reason to think that his stay at Pontiac is only temporary. *See Wrinkles v. Davis*, 311 F. Supp. 2d 735, 743 (N.D. Ind. 2004) (allowing plaintiff to proceed on claims of injunctive relief despite transfer where transfer was only temporary due to facility renovations). And even then, he must put forward evidence showing that IDOC intends to return him to Stateville specifically, as opposed to someplace else. *See Christianson v. Lake Cty. Sheriff*, 2020 WL 7027881, at *1 (N.D. Ind. 2020) (dismissing case as moot where, although plaintiff's transfer to one facility was only temporary, he had not shown that he would be retransferred to the complained-of facility).

The fact that Kyles is now housed in protective custody at Pontiac Correctional Center, another maximum-security facility, does not change this analysis. Kyles's policy claim is about

alleged policies or practices at Stateville, not Pontiac. The fact that there are only two other maximum-security facilities does nothing to suggest that Kyles will at some point return to Stateville. *See Regan v. Anderson*, 2014 WL 1316340, at \*5 (S.D. Ill. 2014) ("Without any substantiation, [plaintiff] did assert in his brief that he is only eligible to stay at Pontiac if he maintains protective custody status. In the event he lost protective custody status, [plaintiff] claims he would be transferred back to Menard or Stateville. These are conclusory statements that the Court finds unpersuasive to show that re-transfer to Menard is 'likely.'").

Kyles has given this Court no reason to think that IDOC intends to return him to Stateville in the future. Kyles left Stateville by his own request in 2015 and has not been housed there since. *See* Sullivan Decl., at ¶ 9 (Dckt. No. 503-1). With no plans to return, and only a speculative likelihood of that possibility, Kyles's claim for injunctive relief is moot. *See Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010) ("[Plaintiff] was transferred to Columbia in October 2006, and he needed to provide more than just his conjecture of a possible return to Waupun to stave off dismissal for mootness."); *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) (affirming dismissal for mootness where plaintiff had requested and received a transfer "with only his conjecture suggesting the possibility of being returned"); *Bernard v. Scott*, 501 F. Supp. 3d 611, 629 (N.D. Ill. 2020) (holding plaintiff's request for injunctive relief moot where he had been transferred and not resided in the complained-of jail for four years); *Earls v. Buske*, 2022 WL 3928515, at \*1 (7th Cir. 2022) ("Because [plaintiff] has already been transferred, and there is no indication that he is likely to be retransferred, this request for injunctive relief is moot.").

Next, Kyles argues that IDOC has in fact housed him at Stateville since 2015. *See* Pl.'s Resp., at 2 n.1 (Dckt. No. 498). As evidence, he points to his IDOC movement record, "which

shows that IDOC transferred Kyles from Lawrence Correctional Center to Stateville on August 23, 2017." *Id.*

That brief return to Stateville does not advance the ball. It took place in 2017, five years ago. And in any event, a short stay five years ago does little to change the fact that any *future* return by Kyles to Stateville is purely speculative. *See Sanford v. Madison County, Illinois*, 2017 WL 3282853, at *2 (S.D. Ill. 2017) ("While it is possible that Sanford will someday return to the Madison County Jail, the likelihood is speculative at best.").

The argument also overstates Kyles's housing history. Plaintiff is correct that he was transferred to Stateville on August 23, 2017. But that transfer lasted only several hours – Kyles was transferred *out* of Stateville that same day. As IDOC records confirm, Kyles was transferred into Stateville on August 23, 2017 at 6:44 AM, but left that afternoon, at 3:32 PM. *See* Kyles Movement History, at 2 (Dckt. No. 495-1).

Kyles was effectively in transit when IDOC brought him to Stateville in August 2017. Jessica Sullivan, the Record Officer Supervisor at Pontiac Correctional Center, explained in a declaration that Kyles was temporarily moved from Lawrence Correctional Center to Stateville on a writ. *See* Sullivan Decl., at ¶ 13 (Dckt. No. 503-1). Hours later, he was transferred to the Northern Reception and Classification Center, and then to court, before being taken back to Lawrence on September 13, 2017. *Id.* at ¶ 14. It was a pit stop.

The whole time (*i.e.*, the whole several hours), Kyles's parent institution, meaning the IDOC facility in which he was *permanently* housed, remained Lawrence Correctional Center. *Id.* at ¶ 5 ("[W]hile an Individual in Custody may be temporarily moved, his or her parent institution does not change."). In other words, Kyles was never "housed" at Stateville on August 23, 2017

10

in a sense that would impact this Court's consideration of mootness. *Id.* at ¶ 15. Kyles's brief stay at Stateville more than five years ago was a layover, at best.

Setting foot in a facility is not a basis for a continuing ability to challenge the policies there, long after the inmate leaves. A temporary stay is unlikely to put the inmate at risk of getting subjected to the same policy, especially when the policy involves the type of policy at issue here. And a momentary stay says little about the prospect of a future return.

Finally, Kyles argues that dismissing the policy claim would improperly let IDOC off the hook. Kyles asserts that "granting Defendants' Motion would mean that the IDOC could continue to maintain an unconstitutional policy at Stateville . . . and yet evade judicial review of the same policy and practice by merely transferring Kyles or any complaining inmate to a different facility before trial." *See* Pl.'s Resp., at 8 (Dckt. No. 498). Kyles thinks that dismissing the claim would leave plaintiffs with no effective way to achieve judicial review of violations of their constitutional rights.[3]

Courts have roundly rejected this argument in the prisoner context. In *Higgason*, the Seventh Circuit explained that "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that *he* will again be subject to the alleged illegality." *See Higgason*, 83 F.3d at 811 (quoting *City of Los*

---

[3] Plaintiff also seems to suggest this case may fall under the voluntary cessation doctrine. *See* Pl.'s Resp., at 6 (Dckt. No. 498) ("To establish mootness through *voluntary cessation*, Defendants must carry what the courts have described as the heavy burden of persuading the Court that the challenged conduct cannot reasonably be expected to start up again.") (cleaned up) (emphasis added). This case is not a voluntary cessation case. That doctrine applies only where the defendants have ceased the allegedly illegal conduct. *See E.E.O.C. v. Flambeau, Inc.*, 846 F.3d 941, 949 (7th Cir. 2017) ("[V]oluntary cessation of *allegedly illegal conduct* does not . . . make the case moot.") (emphasis added). Defendants here do not argue that IDOC has put a stop to the alleged unconstitutional policy. Rather, Defendants point out that Plaintiff has been transferred from the facility with the practices at issue. *See Garcia v. Shah*, 2020 LEXIS 214583, at *6–7 (S.D. Ill. 2020) (distinguishing voluntary cessation from inmate transfer).

*Angeles v. Lyons*, 461 U.S. 95, 109 (1983)) (emphasis added); *see also Moore v. Thieret*, 862 F.2d 148, 149–50 (7th Cir. 1988) ("[Plaintiff] rejoins that he remains subject to the 'whims' of the state's department of corrections, which can at any time send him back to Menard. . . .  There is no indication why our plaintiff, Moore, was transferred from Menard, and no reason on the present record to suppose that he is likely to be sent back to Menard.").

Kyles has made no showing that officials transferred him from Stateville to pull the rug out from under this lawsuit and evade judicial review.  And, as this Court has already discussed, Kyles has not shown any reasonable likelihood of a return to Stateville.

### Conclusion

For the forgoing reasons, Defendants' motion to dismiss is granted.

Date:   February 6, 2023

_____
Steven C. Seeger
United States District Judge

12